UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Rick Lee Hartman<br><br>        Plaintiff,<br><br>v.<br><br>Lance Culliver, Sherry Hill, Andy Doom and Russ Stricker<br><br>        Defendants. | **MEMORANDUM IN OPPOSITION TO DEFENDANT CULLIVER, HILL DOOM AND STRICKER'S MOTION FOR SUMMARY JUDGMENT**<br><br>CASE NO. 11-CV-00905 DSD-AJB |

TO: The Honorable David S. Doty, Judge of Federal District Court, District of Minnesota; Assistant Minnesota Attorney General Angela Behrens, Attorney for Defendants Fabian, Peterson, Hill, Culliver and Doom; and Julie Bowman, Assistant Hennepin County Attorney, Attorney for Defendant Stricker.

## INTRODUCTION

On August 1, 2012, Defendants Lance Culliver, Sherry Hill, Andy Doom and Russ Stricker (referred to collectively as "Defendants") filed motions and memoranda in support of summary judgment against Plaintiff Rick Hartman (Mr. Hartman).[1] This memorandum opposes all Defendants' motions for summary judgment.

## FACTS

The facts are stated in Mr. Hartman's Memorandum in Support of Motion for Summary Judgment, Doc. No. 45, incorporated herein by reference. Any other facts will be corrected and/or amplified in Mr. Hartman's argument.

---

[1] Joan Fabian and Jeffrey Peterson also filed motions for summary judgment. However, they were recently dismissed as defendants pursuant to stipulation. (Doc. Nos.: 67, 69.)

# ARGUMENT

This memorandum addresses Defendants' arguments in this order: 1) claims specific to Defendant Stricker's Memorandum in Support of Summary Judgment; 2) claims specific to Defendant Culliver, Hill and Doom's (referred to collectively as "DOC Defendants") Memorandum in Support of Summary Judgment; and 3) claims raised by all Defendants.

## I. CLAIMS SPECIFIC TO DEFENDANT STRICKER'S MEMORANDUM FOR SUMMARY JUDGMENT

Defendant Stricker erroneously concluded that *Heck v. Humphrey* applies to Mr. Hartman's case, erroneously concluded that Defendant Stricker was not engaged in an unconstitutional or unlawful pattern, practice or custom by denying Mr. Hartman Hennepin County Intensive Supervised Release (ISR) supervision in Hennepin County, and erroneously concluded that Mr. Hartman failed to allege specific facts to support his claim of any constitutional violation.

### A. Heck v. Humphrey does not bar Mr. Hartman's Section 1983 claims because he was twice granted habeas corpus by Minnesota state courts.

Defendant Stricker claimed that *Heck v. Humphrey*, 512 U.S. 477 (1994) barred Mr. Hartman's § 1983 claims against Mr. Stricker. (Stricker S.J. Mem. Doc. No. 55, pp. 7-9.) Relevant to this case, in order to proceed based on a claim of unconstitutional imprisonment under § 1983, a "plaintiff must prove that the conviction or sentence has been … declared invalid by a state tribunal authorized to make such determination. *Heck*, 512 U.S. at 486-87.

The closest case in the Eighth Circuit dealing with this issue is *Marlowe v. Fabian*, 676 F.3d 743 (8th Cir. 2012). In *Marlowe*, the plaintiff, an individual on ISR who was denied housing, filed a § 1983 action. *Id.* at 746. The District Court granted the defendants' motion for summary judgment under *Heck* and the Court of Appeals affirmed on the grounds that the Minnesota state courts never invalidated the DOC's imprisonment of plaintiff or ordered him released. *Id.* at 747. Rather than granting plaintiff's writ of habeas corpus, the Minnesota Court of Appeals remanded plaintiff's case, instructing the DOC to "consider restructuring Marlowe's release plan" and to try to develop a plan where the plaintiff could be released in "Washington County or a neighboring county." *Id.* at 746 (citing *State ex rel Marlowe v. Fabian*, 755 N.W.2d 792, 797 (Minn. Ct. App. 2008).

Unlike *Marlowe*, Mr. Hartman's conditions of release were invalidated twice by Minnesota state district courts in the form of a grant of a writ of habeas corpus. (Doc. No. 46, Decl. of Landon Ascheman, Ex. 9, 11.)[2] The courts in Mr. Hartman's case did not simply instruct the DOC to find approved housing in a neighboring county; rather, the courts ordered Mr. Hartman released and invalidated his imprisonment through the grant of Mr. Hartman's petition for writ of habeas corpus.

---

[2] "Ascheman Decl." refers to the Declaration of Landon Ascheman, Doc. No. 46, and the exhibits attached therein, which was attached to Mr. Hartman's Motion for Summary Judgment.
"Second Ascheman Decl." refers to the Second Declaration of Landon Ascheman, which is attached to this Memorandum. In order to avoid confusion, the exhibits attached to the Second Declaration of Landon Ascheman begin at Exhibit 12 so as to put all of the plaintiff's exhibits in sequential order.

Since Mr. Hartman was twice granted habeas corpus due to his unlawful imprisonment, his case is not barred by *Heck v. Humphrey*.

**B. Defendant Stricker was engaged in an unconstitutional or unlawful pattern, practice or custom.**

Defendant Stricker claims that Mr. Hartman cannot show that Hennepin County and Defendant Stricker engaged in a unconstitutional or unlawful pattern, practice or custom which applies against Defendant Stricker in his official capacity. (Stricker Mem., pp. 10-11.) Liability for an official, like Defendant Stricker, in his official capacity "requires a showing that a policy or custom caused the alleged [constitutional] violation." *Rogers v. City of Little Rock,* 152 F.3d 790, 800 (8th Cir. 1998). There are two ways this can be shown: 1) the plaintiff can "establish that 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted by [the municipality's officers]'"; or 2) the plaintiff can show that a "constitutional deprivation [was] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Marchant v. City of Little Rock*, 741 F.2d 201, 204 (8th Cir. 1984) (quoting *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978)) (numeration added).

Hennepin County had an unwritten policy or custom which prevented Hennepin County ISR from supervising Mr. Hartman in Hennepin County because he was convicted in Wright County. (Ascheman Decl.,Ex. 8 Stricker Depo, p. 32.) This policy or custom was used against Mr. Hartman numerous times to deny him housing in

Hennepin County when there was housing available.  Because of this policy or custom, Mr. Hartman remained incarcerated when he should have been released on ISR.

### C. **Defendant Stricker erroneously concluded that Mr. Hartman failed to allege specific facts to support his claim of any constitutional violation.**

Defendant Stricker argues that Mr. Hartman "has not pled a specific federal [sic] protected right or privilege that Stricker violated.  (Stricker S.J. Mem., Doc. No. 55, pp. 10-11.)  In his complaint, Mr. Hartman alleged that Mr. Stricker violated Mr. Hartman's due process and Fourth Amendment rights by refusing to supervise Mr. Hartman on ISR when Mr. Hartman had housing available in Hennepin County.  (Compl., Doc No. 1; ¶¶ 20-21, 27, 50, 65.)  Furthermore, the record supports Stricker's involvement in denying supervision to Mr. Hartman in Hennepin County.  (Ascheman Decl., Ex. 8, Stricker Depo., pp. 28, 30-32; Ex. 10.)

\*   \*   \*

For the reasons mentioned above, of the arguments specifically raised by Defendant Stricker do not entitle him to summary judgment.

## II. CLAIMS SPECIFIC TO THE DOC DEFENDANTS' MEMORANDUM FOR SUMMARY JUDGMENT

The DOC Defendants misinterpret Minnesota State cases regarding Mr. Hartman's right to release, they erroneously concluded that they were not personally involved in Mr. Hartman's case and they erroneously concluded that Mr. Hartman is not entitled to punitive damages.

### A. The DOC Defendants misinterpret cases regarding Minnesota's right to supervised release.

The DOC Defendants cite a number of cases claimed to show that:

[t]he Minnesota Court of Appeals has repeatedly held that physical release from prison satisfies the DOC's obligation to release an offender on his SRD; that the DOC may transport an offender to a county jail on his SRD if he has no residence; that the DOC does not have an obligation to find housing for offenders; and that the DOC may revoke release for a lack of housing, regardless of whether the offender intentionally violated his conditions.

(DOC Def. S.J. Mem., Doc. No. 51, pp. 15-16.) However, these cases are clearly distinguishable from Mr. Hartman's case. First, *Aguilera*, *Johnson* and *Truelson* dealt with individuals who did not have a residence available. *State ex rel. Aguilera v. Fabian*, 2010 WL 1851349 at * 1 (Minn. Ct. App.); *Truelson v. Fabian*, 2008 WL 933543 at * 1-2 (Minn. Ct. App.). *State ex rel. Johnson v. Fabian*, 2005 WL 704302 at *1 (Minn. Ct. App.). Mr. Hartman had beds reserved for him at 180 Degrees and Damascus Way in Hennepin County.

In *State ex rel. Bottomley v. Fabian*, the court held that "the DOC is not arbitrarily limiting Bottomley's placement options but appears to be actively exploring alternatives

6

that will allow him to be released from custody on intensive supervised release." 2010 WL 2363882 at *3 (Minn. Ct. App.) (citing *State ex rel. Marlowe v. Fabian*, 755 N.W.2d 792, 796 (Minn. Ct. App. 2008)). Mr. Hartman was arbitrarily limited by the Defendants on where he could live, since no one would supervise him in Hennepin County. Unlike *Bottomley*, the DOC was not actively exploring alternatives to release Mr. Hartman from custody since the alternatives (supervision in Hennepin County) was denied by the Defendants.

Finally, Mr. Hartman's case is different from *Marlowe* because the courts did not grant Marlowe's writ of habeas corpus. *Marlowe v. Fabian et al*, 676 F.3d 743 (8th Cir. 2012)[3]. In Mr. Hartman's case, the district courts twice granted his writ of habeas corpus and found his incarceration was illegal. The DOC had the opportunity to appeal these decisions but chose to acquiesce to the decisions of the Minnesota district courts. For these reasons, the cases cited by the DOC Defendants do not apply to Mr. Hartman.

### B. The DOC Defendants were personally involved in the deprivation of Mr. Hartman's constitutional rights[4]

A Defendant's liability under § 1983 "requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)). In *Madewell*, the

---

[3] The DOC Defendants assert that this Court's treatment of *Marlowe* held "that no constitutional violation occurred when DOC revoked homeless offender's release." (DOC Def. S.J. Mem., Doc. No. 51, p. 15.) However, the District Court did not reach the issues argued here because this Court found that Marlowe's case was *Heck* barred. *Marlowe v. Fabian*, 2011 WL 272821 *5, *aff'd* 676 F.3d 743 (8th Cir. 2012). As discussed in Sec. I(A), above, Mr. Hartman's case is not barred by *Heck*.

[4] Defendant Stricker does not raise the issue of lack of personal involvement. However, Defendant Stricker's involvement is established in Sec. I(C) of this memorandum, above.

Court of Appeals found there was no personal involvement where there was no indication in the record that the defendants had any personal connection to the alleged constitutional violation. *Id*. Here, all defendants had personal involvement because they were personally connected to the violations of Mr. Hartman's rights.

### 1. Defendant Lance Culliver

Defendant Culliver had a personal connection to Mr. Hartman's constitutional violation. Defendant Culliver was responsible for approving Mr. Hartman's residences, which he failed to do when Mr. Hartman had beds reserved at 180 Degrees and Damascus Way in Hennepin County. (Ascheman Decl., Ex. 2, Culliver Depo, p. 39; Ex. 3 Hill Depo., p. 47; Ex. 7 Doom Depo., p. 43.) Defendant Culliver made the initial decision to revoke Mr. Hartman's ISR when he was faced with impossible ISR conditions due to the Defendants' refusal to supervise Mr. Hartman in Hennepin County. (Ascheman Decl. Ex. 2; Second Ascheman Decl. Ex. 12.) Furthermore, Defendant Culliver acted in bad faith by formulating a release plan which included the Buffalo Hotel, a location Defendant Culliver knew did not accept Level III offenders like Mr. Hartman. (Ascheman Decl. Ex. 2; Ex. 3, Culliver Depo., p. 30; Ex. 4, Hill Depo., p.35; Ex. 7, Doom Depo., pp. 55-56.) (*See also* Hartman S.J. Mem., Doc. No. 45, pp. 2-6.)

### 2. Defendant Sherry Hill

Defendant Hill had a personal connection to Mr. Hartman's constitutional violation. Defendant Hill was responsible for approving Mr. Hartman's residences, which she failed to do when Mr. Hartman had beds reserved at 180 Degrees and

Damascus Way in Hennepin County. (Ascheman Decl., Ex. 2, Culliver Depo, p. 39; Ex. 3 Hill Depo., p. 47; Ex. 7 Doom Depo., p. 43.) Defendant Hill approved of the decision to revoke Mr. Hartman's ISR when he was faced with impossible ISR conditions due to the Defendants' refusal to supervise Mr. Hartman in Hennepin County. (Ascheman Decl. Ex. 2; Second Ascheman Decl. Ex. 12.) Furthermore, Defendant Hill acted in bad faith by approving a release plan which included the Buffalo Hotel, a location Defendant Culliver knew did not accept Level III offenders like Mr. Hartman. (Ascheman Decl. Ex. 2; Ex. 3, Culliver Depo., p. 30; Ex. 4, Hill Depo., p.35; Ex. 7, Doom Depo., pp. 55-56.) (*See also* Hartman S.J. Mem., Doc. No. 45, pp. 2-6.)

### 3. Defendant Andy Doom

Defendant Doom had a personal connection to Mr. Hartman's constitutional right violations. Defendant Doom was Defendant Hill's supervisor. It was his responsibility, along with Defendant Hill to approve ISR supervision across county lines. (Second Ascheman Decl., Ex. 13, Doom Depo., p. 46.) Defendant Doom testified that his agents were not authorized to supervise in Hennepin County without his direct permission and he told Defendant Hill that the DOC could not supervise Mr. Hartman in Hennepin County. (*Id.*; Ascheman Decl., Ex. 7, Doom Depo, p. 69.) Furthermore, Defendant Doom helped decide to house Mr. Hartman in the Wright County jail. (Ascheman Decl., Ex. 7, Doom Depo., p. 51.) (*See also* Hartman S.J. Mem., Doc. No. 45, pp. 2-6.) The DOC Defendants claim that Defendant Doom "did not get involved with individual offenders' cases." (DOC Def. S.J. Mem., Doc. No. 51, pp. 29-30.) However, the DOC

Defendants are contradicted by their own filings, which state "[t]here is nothing in Wright County at this time. Mr. Hartman will not be accepted for supervision outside of Wright County per his supervisor Andy Doom." (Halseth Aff., Doc. No. 58-1, Ex. 1, p. 10.) Not only does this help show Defendant Doom's culpability, it also creates a genuine issue of material fact as to whether the DOC would supervise Mr. Hartman *anywhere* outside of Wright County, contrary to the DOC Defendant's assertion in their memorandum. (*See* DOC Def. S.J. Mem., Doc. No. 51, pp. 14-17.)

### C. Mr. Hartman is entitled to punitive damages.

Punitive damages are appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 55-56 (1983). Here, there is ample evidence that the Defendants meet this standard.

Continuously, the Defendants refused to supervise Mr. Hartman in Hennepin County. Mr. Hartman had no housing in Wright County. (Halseth Aff., Doc. No. 58-1 Ex. 1, p. 2.) Defendants knew that Mr. Hartman had housing available at 180 Degrees and Damascus Way, which are halfway houses in Hennepin County. (Ascheman Decl., Ex. 3, Culliver Depo, p. 39; Ex. 4, Hill Depo., pp. 46-47, 93-94; Ex. 5, Testimony of Angela Heagle, p. 30; Ex. 6, Hill Testimony, pp.57-58; Halseth Aff., Doc. No. 58-1, Ex. 1 pp. 6, 9.) Defendants did so knowing that Mr. Hartman did not have any other place to live and it would lead to his ISR revocation. This constitutes callous and reckless indifference to Mr. Hartman's federally protected rights. At the very least, there is a genuine issue of material fact on this issue that must be resolved by the factfinder at trial.

* * *

For the reasons mentioned above, of the arguments specifically raised by the DOC Defendants do not entitle them to summary judgment.

### III. <u>CLAIMS RAISED BY ALL DEFENDANTS.</u>

All Defendants erroneously concluded that Mr. Hartman made few efforts to find housing and that they are protected by qualified immunity.

#### A. <u>The Defendants erroneously concluded that Mr. Hartman made few efforts to find housing</u>

All Defendants claim that Mr. Hartman made few efforts to find housing. (DOC Def. S.J. Mem., Doc. No. 51, pp. 7, 16, 21; Stricker S.J. Mem., Doc. No. 55, p. 4.) However, that was not the case. In his answer to the DOC Defendant's First Set of Interrogatories, Mr. Hartman identified the following properties he tried to reside at:

- Center of Alcohol and Drug Services
- Buffalo Hotel
- 180 Degrees
- A property owned by Doug Arnolds in Mankato or Monticello, Minnesota
- His sister's residence in Wright County
- His brother's residence in Clinton, Iowa
- King's Halfway House in Clinton, Iowa
- Damascus Way Reentry Center, Inc.
- R.S. Eden
- Central Minnesota Re-Entry Project
- A house owned by Daniel Walton in Minneapolis, Minnesota
- The Attic
- A house owned by Al Hawkins in Hennepin County, Minnesota
- A sober house in Hennepin County, Minnesota
- A property owned by Mike Davis in Hennepin County, Minnesota

11

- Union Gospel Mission
- Alpha Human Services, Inc.
- King's House, a halfway house in Clinton, Iowa.

(Second Ascheman Decl., Ex. 14, Hartman Interrog. Nos. 4-9.)  At most, whether Mr. Hartman looked hard enough to find housing is a genuine issue of material fact which must be decided by the factfinder at trial.  Fed. R. Civ. P. 56.

### B. **Defendants are not entitled to qualified immunity**

A qualified immunity analysis has two components: 1) whether a plaintiff's rights were violated by the defendant(s); and 2) whether the plaintiff's rights were clearly established at the time of violation.  *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).  The defendant has the burden of pleading and proving that qualified immunity applies and the plaintiff has the burden of proving that the right was clearly established.  *Monroe v. Arkansas State University*, 495 F. 3d 591, 594 (8th Cir. 2007) (citation omitted).  Qualified immunity does not apply here because Mr. Hartman's clearly established rights were violated by the Defendants.

#### 1. **Mr. Hartman's rights were violated by the Defendants**

Mr. Hartman's substantive and procedural due process rights, and his Fourth Amendment rights were violated by Defendants.  This issue was thoroughly argued in Plaintiff's Memorandum in Support of Motion for Summary Judgment, pp. 7-19, incorporated herein by reference.

#### 2. **Mr. Hartman's rights were clearly established.**

For a right to be "clearly established" "the contours of the right must be sufficiently clear that a reasonable official would understand that he [or she] is doing

violates that right." *Davis v. Hall*, 375 F.3d 703, 720 (8th Cir. 2004) (quoting *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989)). A right can be clearly established even in novel factual circumstances. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). *Hope* changed the "clearly established" element of qualified immunity "from a hunt for prior cases with precisely the same facts to asking whether the official had fair notice her conduct was unconstitutional." *Lindsey v. City of Orrick* 491 F.3d 892, 902 (8th Cir. 2007) (citing *Hope*, 536 U.S. at 741)).

In this case, the Mr. Hartman's rights were clearly established for two reasons: 1) all Defendants had notice that denying Mr. Hartman supervision in Hennepin County for no other reason than they chose not to supervise there is unconstitutional; and 2) Eighth Circuit precedent establishes that the right to be free from unlawful incarceration is clearly established.

### a. *Defendants had notice that denying Mr. Hartman supervision in Hennepin County for no other reason than they chose not supervise him there is unconstitutional.*

This case is unique for the lack of legitimate reasons why the DOC Defendants or Hennepin County denied Mr. Hartman housing in Hennepin County. The DOC Defendants claimed that their refusal to supervise Mr. Hartman was based on lack of funding and caseload limits. (DOC Def. Mem., pp. 5, 16.) However, this argument creates the illusion of an excess burden on the DOC. The DOC already supervises CIP offenders in Hennepin County. (Ascheman Decl., Ex. 3, Culliver Depo, p. 8; Ex. 4, Hill Depo., p. 33.) This requires an agent, like Defendant Culliver, to drive down to

Hennepin County and monitor his clients. (*Id.*, Ex. 3, Culliver Depo, p. 10.) Similarly, the DOC supervised Tijuan Johnson in Hennepin County, even though he was a Sherburne County commit. (*Id.* Ex. 3, Culliver Depo., p. 63; Ex. 4, Depo. of Hill, pp. 77-79.) Since the DOC already supervises individuals in Hennepin County, there was no reason for them to deny supervision to Mr. Hartman. Furthermore, they should have known that when an individual is entitled to release, like Mr. Hartman was, simply refusing to supervise him in an area where he had housing is an unconstitutional due process violation. Furthermore, the fact that DOC agents, like Defendant Culliver, have a caseload limit is irrelevant because the amount of offenders he supervises does not change depending on the geographical location of Mr. Hartman.

### b. Eighth Circuit precedent establishes that the right to be free from unlawful incarceration is clearly established.

In cases involving unlawful incarceration, the "clearly established" element was satisfied by a showing that the Defendants ignored a court order finding the imprisonment was unlawful. *Davis*, 375 F.3d at 719-20; *Slone v. Herman*, 983 F.2d 107, 111 (8th Cir. 1993).

In *Sloane*, the plaintiff was convicted of armed criminal action and assault and sentenced to a prison term of three years. *Slone* 983 F.2d at 108. After the plaintiff was taken into the custody of the Department of Corrections, the sentencing judge, pursuant to Missouri statute, ordered that the plaintiff's sentence be suspended and the plaintiff be placed on probation in lieu of prison. *Id.* The state did not request a hearing pursuant to

statute and the sentencing judge's order became final and non-appealable under Missouri statute. *Id.* In spite of the judge's order, the Department of Corrections refused to release the plaintiff until eight months after the judge's order went into effect. *Id.* at 109. In the plaintiff's section 1983 suit, the District Court granted the defendant's motion for summary judgment on the grounds of qualified immunity. The Eighth Circuit Court of appeals reversed, holding that the plaintiff had a "clearly established liberty established liberty interest in being freed from prison" once the judge's order became final and non appealable. *Id.* at 109-10.

Like the plaintiff in *Slone*, Mr. Hartman was convicted of a crime and then had his incarceration invalidated. Also, like *Slone*, Mr. Hartman's right to be free from unlawful incarceration was violated. Mr. Hartman's right release was established three times: once under Minn. Stat. §244.101, subd. 1, which establishes that an inmate must be released after two thirds of his sentence is completed, and twice by the Minnesota district court's grant of Mr. Hartman's petitions for writ of habeas corpus. At the time of the Defendants' actions, which began in 2008, the Court's ruling in *Slone* had been in effect for fifteen years, which shows the right was clearly established. *See Davis*, 375 F.3d 703 (8th Cir. 2004) (denied qualified immunity on the grounds that "*Slone* is on all fours with Davis's case and had been the law of our circuit for over half a decade at the time of defendants' actions.")

Instead of releasing Mr. Hartman after his imprisonment was invalidated by his first habeas corpus petition, the DOC Defendants placed Mr. Hartman in the Wright County jail, which was continued confinement. The DOC Defendants claim that "[i]n

some ways, Hartman had more freedom than other ISR offenders" while he was incarcerated in the Wright County jail. (DOC Def. S.J., Doc. Mem., Doc. No. 55, p. 9.) Mr. Hartman was only released from 10:00 A.M. to 2:00 P.M., Monday through Friday. (Second Ascheman Decl., Ex. 15, Hartman Depo. p. 36.) Presumably, during this time of day, most people are at work. No potential landlords ever called Mr. Hartman back when he left a message and told them to call him at the Wright County jail. (*Id.*, p. 35.) The rest of the time, he was locked in jail like everyone else and had to follow all of the jail rules. (*Id.*, Hartman Depo., p. 38; Ex. 13, Doom Depo. p. 57.) However, Mr. Hartman could not receive his social security checks in jail, which he needed to pay for housing. (Ex. 15, Hartman Depo. p. 36.) Moreover, while he was at the jail, the jail computer systems continuously identified Mr. Hartman as incarcerated. (*Id.*, Ex. 16.) All in all, Mr. Hartman's "residence" at the Wright County jail was more akin to incarceration. Therefore, Mr. Hartman's unlawful incarceration continued while at the Wright County jail. Mr. Hartman's case is analogous to *Slone* which held that the right to be free from wrongful imprisonment was clearly established.

\* \* \*

For the reasons mentioned above, the arguments raised by all Defendants do not entitle them to summary judgment.

## **CONCLUSION**

For the above mentioned reasons, Defendants violated Mr. Hartman's constitutional rights under Section 1983. Therefore, the Defendants' Motions for Summary Judgment must be denied.

Dated:  August 22, 2012                                Respectfully submitted,
                                                                         ASCHEMAN & SMITH, LLC

                                                                         /s/ Landon J. Ascheman
                                                                         Landon J. Ascheman (#389886)
                                                                         500 Laurel Avenue
                                                                         St. Paul, MN 55102
                                                                         (612) 217-0077 (Phone)
                                                                         (651) 344-0700 (Fax)
                                                                         law@aschemansmith.com

                                                                         **Attorney for Plaintiff**