UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Rick Lee Hartman<br><br>                Plaintiff,<br><br>v.<br><br>Lance Culliver, Sherry Hill, Andy Doom and Russ Stricker<br><br>                Defendants. | **PLAINTIFF'S REPLY TO DEFENDANT CULLIVER, HILL DOOM AND STRICKER'S MEMORANDUA OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>CASE NO.11-CV-00905 DSD-AJB |

TO: The Honorable David S. Doty, Judge of Federal District Court, District of Minnesota; Assistant Minnesota Attorney General Angela Behrens, Attorney for Defendants Fabian, Peterson, Hill, Culliver and Doom; and Julie Bowman, Assistant Hennepin County Attorney, Attorney for Defendant Stricker.

## INTRODUCTION

On August 22, 2012, Defendants Lance Culliver, Sherry Hill, Andy Doom and Russ Stricker (referred to collectively as "Defendants") filed memoranda opposing Mr. Hartman's Motion for Summary Judgment.  (Doc. Nos. 70, 75.)  Defendants Culliver, Hill, and Doom (referred to collectively as "DOC Defendants") erroneously concluded that they did not approve Mr. Hartman to live at the Buffalo Motel, that Mr. Hartman's right to be free from unlawful and prolonged incarceration is limited by state created parole laws, and that offensive collateral estoppel does not apply to this case.

Furthermore, all Defendants erroneously concluded that there were no constitutional violations, that they are entitled to qualified immunity and that they were

1

not personally involved in the deprivation of Mr. Hartman's rights.  However, since these issues were thoroughly argued in Mr. Hartman's Memorandum in Support of Summary Judgment and his Memorandum in Opposition to the Defendants' Motions for Summary Judgment, they will not be reargued here.

## ARGUMENT

### A.  The DOC Defendants approved Mr. Hartman to live at the Buffalo Motel.

The DOC Defendants claim that "[t]he DOC also never approved Hartman to live at the Buffalo Motel." (DOC Def. Mem. Opp. S.J., pp. 2-3.)  However, Mr. Hartman's violation reports dated November 26, 2008 and March 23, 2012 state that Defendants Culliver and Hill approved the Buffalo Motel as a backup residence for Mr. Hartman. (Ascheman Decl., Doc. No. 46, Ex. 2; Second Ascheman Decl., Doc. No. 74, Ex. 12.) The DOC Defendants claim that "back-up placements [like the Buffalo Motel] are listed only because the computer system related to release planning requires something to be listed in the space for back-up placements." (DOC Def. Mem. Opp. S.J., p. 3.)  The DOC Defendants relegate the back-up housing requirement to a placeholder residence with no real meaning.  If this were true, one wonders why the DOC requires a back-up placement at all.  Common sense dictates that if the DOC computer system requires a back-up placement, the placement should at least be legitimate.  As previously argued, the Buffalo Motel was never legitimate since it did not accept Level III offenders like Mr. Hartman.

B. **Mr. Hartman's right to be free from unlawful incarceration is not limited by the scope of parole rights created by state law, since it is a substantive due process issue.**

The DOC Defendants try to claim that Mr. Hartman's substantive due process right to be free from wrongful, prolonged incarceration depends on the scope of parole rights created by state law. (DOC Def. Mem. Opp. Pl.'s S.J. Mtn, p. 11.) While it is true that states may create liberty interests that require due process protections, those protections exist under procedural due process. *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993) (citing *Meis v. Gunter*, 906 F.2d 364, 369 (8th Cir. 1990)). However, the right to be free from unlawful incarceration is based on substantive, not procedural, due process. *Davis v. Hall*, 375 F.3d 703, 709-719 (8th Cir. 2004). Therefore, Mr. Hartman's right to be free from wrongful, prolonged incarceration does not depend on the scope of parole rights created by state law, since it is a substantive due process issue.

C. **The DOC Defendants erroneously concluded that offensive collateral estoppel does not apply.**

**1. Mr. Hartman's collateral estoppel argument was properly raised.**

The DOC Defendants argue that Mr. Hartman did not plead estoppel. (DOC Def. Mem. Opp. Pl.'s S.J. Mtn., pp. 23-24.) The two cases cited by the DOC Defendants do not apply to Mr. Hartman. First, in *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, the United States Supreme Court held that "[r]es judicata and collateral estoppel are affirmative defenses that must be pleaded." 402 U.S. 313, 350 (1971) (citing Fed. R. Civ. P. 8(c)). However, Mr. Hartman's use of collateral estoppel does not constitute an affirmative defense and is not governed by Rule 8(c). That much is confirmed in the

3

second case cited by the DOC Defendants, which held that "issue preclusion by plaintiffs is not subject to Fed. R. Civ. P. 8(c)". *Harvey v. United Transp. Union*, 878 F.2d 1235, 1243 (8th Cir. 1989). Furthermore, the DOC Defendants cite *Harvey* claiming that it supports the rationale that "requiring defendants to plead estoppel as a defense apply to offensive use of estoppel." (DOC Def. Mem. Opp. Pl.'s S.J. Mtn., pp. 23-24.) However, the DOC Defendants wholly take *Harvey* out of context. In *Harvey*, the issue centered on whether a plaintiff could argue offensive collateral estoppel "approximately one year and four months after the trial and less than one month before the district court issued its opinion." *Harvey*, 878 F.2d at 1243. The Court held that the plaintiff's use of collateral estoppel at that point of the litigation did not "provide the opposing party of notice of the plea of estoppel and a chance to argue … why the imposition of an estoppel would be inappropriate" and it does not promote the policies behind collateral estoppel, which are conserving judicial resources and preventing the relitigation of issues. *Id.* (citing *Blonder*, 402 U.S. at 313).

Unlike *Harvey*, the DOC Defendants were put on notice of Mr. Hartman's estoppel argument and, by virtue of their Memorandum in Opposition to Mr. Hartman's summary judgment motion, had a chance to respond. Second, unlike *Harvey*, where the plaintiff did not argue estoppel until approximately one year and four months after the trial concluded, Mr. Hartman raised the issue when he timely filed a motion for summary judgment. Therefore, the use of offensive collateral estoppel here promotes the conservation of judicial resources and the preventing the relitigation of issues. For these reasons, Mr. Hartman's offensive collateral estoppel argument was properly raised.

### 2. The issue on which Mr. Hartman seeks estoppel was clearly adjudicated.

The issue sought to be estopped – whether Mr. Hartman was subject to wrongful, prolonged incarceration – was clearly adjudicated in Mr. Hartman's habeas proceedings. The DOC Defendants try to muddle the issue by claiming that the issue sought to be estopped was not clearly adjudicated. (DOC Def. Mem. in Opp. to Pl.'s S.J. Mtn, pp. 24-27.) However, the DOC Defendants create nuance where there is none. In Minnesota, "the function of the writ of habeas corpus is to relieve one from unlawful restraint." *State ex rel. Bassett v. Tahash*, 116 N.W.2d 564, 565 (Minn. 1962). In a habeas corpus proceeding, "the only issues the district court will consider are constitutional and jurisdictional challenges." *Joelson v. O'Keefe*, 594 N.W.2d 905, 908 (Minn. Ct. App. 1999) (citing *State ex rel Anderson v. United States Veterans Hosp.*, 128 N.W.2d 710, 714 (Minn. 1964)). Since there were no jurisdictional issues raised, the only issue adjudicated in Mr. Hartman's habeas cases were his unconstitutional confinement.

### 3. Final judgment was entered.

This issue was argued in Mr. Hartman's summary judgment memorandum. (Doc. No. 45, p. 15, incorporated herein by reference.)

### 4. The DOC Defendants were parties or were at least in privity and had a full and fair opportunity to defend the claims.

Privity is established here because the DOC Defendants had a controlling participation in the habeas actions and had a self interest in habeas corpus cases. (Hartman Mem. S.J. , Doc No. 45 pp. 15-17.) The DOC Defendant's interests are evident since the sole issue of Mr. Hartman's habeas cases was whether they were justified in

5

refusing to supervise Mr. Hartman in Hennepin County. On that issue the Minnesota District Courts held in favor of Mr. Hartman. (*Id.*)

The DOC Defendants further argue that they did not have a full and fair opportunity to litigate the issues. (DOC Def. Mem. in Opp. to Pl.'s S.J. Mtn, p. 29.) The DOC Defendants raise two bases to support this assertion. First, the DOC Defendants point to the lack of the opportunity for discovery in a habeas corpus case. (*Id.*) However, the lack of discovery alone is not sufficient to show unfairness; the DOC Defendants must show how the lack of discovery limited their ability to present their position in the case. *See Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702 (Minn. 1982) ("[a]lthough his right to discovery was admittedly limited, … respondent has failed to indicate how his limitation encumbered his ability to present fully his position."). The DOC Defendants have not established *why* a lack of discovery is pertinent to this issue. The closest they come is claiming that they were unable to assert defenses. (DOC Def. Mem. in Opp. to Pl.'s S.J. Mtn, p. 29.) However, the defenses they asserted in this case remain available. Indeed, the issue sought to be estopped is solely related to whether Mr. Hartman's right to be free from prolonged, unlawful incarceration was violated.

Second, the DOC Defendants argue that because "housing options developed for Mr. Hartman, any appeal would have been moot." (*Id.*) The DOC did not state what those housing options were. Also, in Mr. Hartman's first and second habeas cases, the courts gave the DOC sixty and thirty days respectively, to find Mr. Hartman housing. (Ascheman Decl., Doc. No. 46, Ex. 9, 11.) In Minnesota, an appeal of a grant or denial of a writ of habeas corpus must be heard by the court of appeals within fifteen days of the

date the appeal is filed. Minn. Stat. § 589.30. Therefore, the DOC Defendants were not constrained by mootness when they chose not to appeal the habeas orders.

Furthermore, an appeal by the state would not have been moot. In Minnesota, a case is moot if an appellate court "is unable to grant effectual relief." *In re Schmidt*, 443 N.W.2d 824, 826 (Minn. 1989). Even if a case would otherwise be deemed moot, it may be heard on appeal if there is "evidence that collateral consequences [may result] from a judgment." *In re McCaskill*, 603 N.W.2d 326, 329 (Minn. 1999).

The issue in both of Mr. Hartman's habeas corpus petitions was whether the Defendants were illegally detaining him because they would not supervise him in Hennepin County, even though Hennepin County was the only place he could find housing. (Ascheman Decl., Doc. No. 46, Ex. 9, 11.) That status did not change until after Mr. Hartman's second grant of habeas corpus. Therefore, that issue could have been appealed because the appellate court could have granted effectual relief in requiring one of the Defendants to supervise Mr. Hartman in Hennepin County. Furthermore, collateral consequences existed because Mr. Hartman was not ordered released unconditionally. *See Johnson v. Fabian*, 2008 WL 3290669, * 2, n. 2 (Although we cannot grant the relief typically given to a successful habeas petitioner-release-collateral consequences are possible because appellant has not been released unconditionally. (citations omitted)).

### 5. Estopping the DOC Defendants from relitigating the issue of Mr. Hartman's unconstitutional confinement is not unfair.

The DOC Defendants claim that it would be unfair to apply offensive collateral estoppel to this case because this case was not forseeable, the judgment relied on is inconsistent with other judgments in the defendant's favor and different procedures apply in this proceeding. (DOC Def. Mem. in Opp. to Pl.'s S.J. Mtn, pp. 29-31.) First, the DOC Defendants should have been on notice that Mr. Hartman would file a civil suit. Two Minnesota District Courts held that Mr. Hartman was being unconstitutionally held due to the actions of the DOC Defendants. Furthermore, even if these proceedings were unforeseeable, the DOC Defendants do not explain why they were prejudiced or what they would have done differently with foreknowledge of a § 1983 suit.

Second, the DOC Defendants argue that "caselaw strongly suggest[s] that the habeas decisions in Hartman's favor were incorrect as a matter of law." (*Id*., pp. 30-31.) The cases cited by the DOC Defendants were distinguished by Mr. Hartman in his Memorandum in Opposition to the DOC Defendants' Motion for Summary Judgment, pp.7-8, incorporated herein by reference. Furthermore, as argued on page 7, above, the DOC Defendants could have appealed the adverse judgments.

Finally, the DOC Defendants argue that they did not have the opportunity to litigate Mr. Hartman's claims. (DOC Def. Mem. in Opp. to Pl.'s S.J. Mtn, pp. 30-31.) However, the DOC Defendants misstated this factor in their memorandum. In its brief, the DOC Defendants cited *Parklane Hoisery Co. v. Shore*, 439 U.S. 322 (1979) to support its contention that unfairness is shown if "different procedures apply in the

second proceeding than in the first proceeding." ((DOC Def. Mem. in Opp. to Pl.'s S.J. Mtn, p. 30.) However, this factor applies only if the different procedures may cause a different result in the litigation. *Parklane*, 439 U.S. at 330-332. Here, the DOC Defendants do not identify how the procedures here would cause a different result. There would not have been a different result if the procedures were the same.

* * *

For these reasons, the Court should estop the DOC Defendants from relitigating the issue of whether Mr. Hartman was wrongfully incarcerated.

**D. Defendants erroneously concluded that there were no constitutional violations, that they are entitled to qualified immunity and that they were not personally involved in the deprivation of Mr. Hartman's Constitutional rights.**

The issues regarding constitutional violations, qualified immunity and personal involvement were already raised and argued in Mr. Hartman's Memorandum in Support of Motion for Summary Judgment, Doc. No. 45 and/or Mr. Hartman's Memorandum in Opposition to the Defendants' Motions for Summary Judgment, Doc. No. 71, incorporated herein by reference.

## CONCLUSION

For the above mentioned reasons, this Court should grant Mr. Hartman's motion for summary judgment.

Dated:  September 5, 2012               Respectfully submitted,
                                        ASCHEMAN & SMITH, LLC

                                        /s/ Landon J. Ascheman
                                        Landon J. Ascheman (#389886)
                                        500 Laurel Avenue
                                        St. Paul, MN 55102
                                        (612) 217-0077 (Phone)
                                        (651) 344-0700 (Fax)
                                        law@aschemansmith.com

                                        **Attorney for Plaintiff**