UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 11-905(DSD/AJB)

Rick Lee Hartman,

    Plaintiff,

v.                                               **ORDER**

Joan Fabian, Jeffrey Peterson,
Lance Culliver, Sherry Hill,
Andy Doom and Russ Stricker,

    Defendants.

    Landon J. Ascheman, Esq. and Ascheman & Smith, LLC, 500 Laurel Avenue, St. Paul, MN 55102, counsel for plaintiff.

    Angela Behrens, Esq., Minnesota Attorney General's Office, Suite 900, 445 Minnesota Street, St. Paul, MN 55101 and Julie K. Bowman, Esq., Hennepin County Attorney's Office, A2000, 300 South Sixth Street, Minneapolis, MN 55487, counsel for defendants.

This matter is before the court upon the cross motions for summary judgment by plaintiff Rick Lee Hartman and by defendants Lance Culliver, Sherry Hill, Andy Doom and Russ Stricker (collectively, defendants).[1] Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion by defendants.

---

[1] On August 15, 2012, defendants Joan Fabian and Jeffrey Peterson were dismissed pursuant to a stipulation among the parties. ECF No. 69. As a result, only counts one and three of the amended complaint remain.

**BACKGROUND**

This civil-rights dispute arises out of the post-incarceration supervision of Hartman. In 1991, Hartman pleaded guilty to first-degree criminal sexual conduct in Wright County, Minnesota and was sentenced to incarceration for a term of 300 months. Fink Aff. ¶ 3. Hartman was scheduled to be released from prison and placed on supervised release on February 2, 2008. Id. ¶ 5.

Hartman is a level-III predatory offender and is required to serve his post-incarceration supervision on intensive supervised release (ISR). Tardy Aff. ¶ 4. Twelve Minnesota counties, including Hennepin County, provide their own ISR supervision. Hill Aff. ¶¶ 3-4. The Minnesota Department of Corrections (DOC) provides ISR supervision for all other counties in the state. Id. ¶ 3.

Upon release from incarceration, ISR supervisees are responsible for finding approved housing for their term of ISR, which includes a period of house arrest. Id. ¶¶ 8, 21. If a supervisee has approved permanent housing, he or she may reside in any county in the state. Id. ¶ 10. If an ISR supervisee has only transitional housing, such as a halfway house, the applicable county authority or the DOC must agree to supervise the ISR supervisee. Id. ¶¶ 18-19.

In pre-release meetings with his case manager, Hartman did not identify acceptable ISR housing. Tardy Aff. ¶ 11. Prior to

Hartman's release, however, a Wright County court ordered Hartman committed to the Minnesota Sex Offender Program upon the start of his supervised release. Id. ¶ 14. Hartman participated in the program and was released to begin ISR on November 26, 2008. Culliver Aff. ¶ 14.

On that date, Hartman had yet to secure approved housing. ISR Agent Culliver provided Hartman with a telephone, telephone book and newspaper to attempt to find housing. Culliver Dep. 32:13-18. These efforts were unsuccessful, and Culliver obtained a warrant and arrested Hartman for violating the terms of his ISR. Culliver Aff. ¶¶ 17-18. Culliver took Hartman to the Wright County jail pending a revocation hearing. Id. At that hearing on December 15, 2008, Hartman's release was revoked and he was ordered incarcerated for ninety days or until he found approved housing. Peterson Aff. ¶ 10. Hartman continued to look for housing during this period. Tardy Aff. ¶ 16. Hartman located transitional housing at two halfway houses in Hennepin County, but was refused supervision because he was not a resident of the county and had no permanent residence. Id. ¶¶ 16-17.

In May 2009, Hartman petitioned for a writ of habeas corpus in state court. Fink Aff. ¶ 8. The petition was granted on October 30, 2009, and the DOC was ordered to place Hartman in approved housing within sixty days or release him from custody. Ascheman Decl. Ex. 9, at 6 (order granting writ of habeas corpus). In

response, the DOC placed Hartman in "three-quarters" housing at the Wright County jail, beginning December 17, 2009. Fink Aff. Ex. 4, at 0974. Under this arrangement, Hartman was housed in the jail but could leave during the day for approved activities. Hill Aff. ¶¶ 24, 42; Culliver Aff. ¶ 29.

After the period of three-quarters housing expired, Hartman was still without approved housing. As a result, his supervised release was again revoked on April 5, 2010. Peterson Aff. ¶ 12. On the same day, Hartman filed another petition for a writ of habeas corpus in state court. Fink Aff. ¶ 9. The petition was granted on May 11, 2010, and the DOC was ordered to either place Hartman in approved housing within thirty days or release him. See Ascheman Decl. Ex. 11 (order granting second writ of habeas corpus). Hennepin County agreed to supervise Hartman in a Minneapolis halfway house and supervision began on June 10, 2010. Hill Aff. ¶ 48.

On December 21, 2011, Hartman filed an amended complaint, alleging various 42 U.S.C. § 1983 violations. Hartman and defendants both move for summary judgment.

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

4

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Collateral Estoppel**

Hartman argues that his successful habeas petitions in state court prove that his incarceration was unconstitutional and that defendants should be collaterally estopped from arguing otherwise.

"[I]ssues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they would enjoy in the courts of the State where the judgment was rendered." Migra v. Warren City Sch. Dist. Bd., 465 U.S. 75, 83 (1984) (citations omitted). Thus, Minnesota law on collateral estoppel is instructive.

> Under Minnesota law, collateral estoppel is appropriate when the following four elements are met: (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

Ill. Farmers Ins. Co. v. Reed, 662 N.W.2d 529, 531-32 (Minn. 2003) (citation omitted). Where, as here, the plaintiff argues for offensive collateral estoppel, its applicability "is to be decided on a case-by-case basis depending on whether the prerequisites of a full and fair opportunity to litigate the issue in the prior action and fairness are present." Barth v. Stenwick, 761 N.W.2d 502, 508 (Minn. Ct. App. 2009) (citation omitted). The party invoking collateral estoppel has the burden of proof. Id.

Defendants argue that they were neither parties nor in privity with parties in the state habeas proceedings. "Privity does not necessarily exist in the employer-employee relationship." Kaiser v. N. States Power Co., 353 N.W.2d 899, 904 (Minn. 1984) (citations omitted). "Reasons militating against finding employer-employee

6

privity include that ... the party to be precluded did not control the first action; that the party did not have a direct financial interest in the prior lawsuit; and that the party did not have the right to appeal from the prior judgment." Id. (citation omitted). Here, the individual defendants had no control, no financial interest, and no right to appeal the habeas proceedings brought against the state. As such, the individual defendants in the present action were not in privity with the state in the habeas proceedings, and did not have a full and fair opportunity to litigate the issue presented in the present action. Therefore, the court declines to invoke offensive collateral estoppel, and summary judgment in favor of Hartman is not warranted.

**III.  Section 1983**

Section 1983 is not an independent source of rights, and a successful claim must demonstrate a deprivation of a specific right, privilege or immunity. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). Hartman alleges that defendants violated his (1) Fourth Amendment rights, (2) procedural due process rights, and (3) substantive due process rights.[2] Specifically, Hartman alleges

---

[2] Hartman sued defendants in both their individual and official capacities. The DOC defendants - Culliver, Hill and Doom - are immune from suit in their official capacities. "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) (citation omitted). "[T]he Eleventh Amendment bars ... § 1983 [damages] claims against the State ... and its ... agencies." Murphy v.
(continued...)

that Culliver improperly commenced revocation proceedings, Hill and Doom rejected reasonable release plans for residences outside of Wright County and Stricker declined to supervise Hartman in Hennepin County.  Defendants respond that qualified immunity applies.

"Qualified immunity protects government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Crutcher-Sanchez v. Cnty. of Dakota, 687 F.3d 979, 984 (8th Cir. 2012) (alteration in original) (citation and internal quotation marks omitted).  Violation of a clearly established right means "that the unlawfulness was apparent in light of preexisting law." Chambers v. Pennycook, 641 F.3d 898, 908 (8th Cir. 2011) (citation omitted).  The qualified immunity analysis has two components: whether the government official violated the plaintiff's rights and whether the right was clearly established. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Hartman cannot demonstrate a violation of his constitutional rights.[3]

---

[2](...continued)
Arkansas, 127 F.3d 750, 754 (8th Cir. 1997) (citations omitted). As such, the DOC defendants would not be liable in their official capacity even if the court found constitutional violations.

[3] Because Hartman cannot demonstrate a violation of a
(continued...)

**A.    Fourth Amendment**

Hartman first argues that his arrest and the revocation of his supervised release violated the Fourth Amendment protection against unreasonable seizure. "The standard for determining lawful arrest under ... section 1983 ... is centered on the issue of good faith and probable cause." Washington v. Simpson, 806 F.2d 192, 195 (8th Cir. 1986). "In the context of an arrest warrant for a parole violation, probable cause exists if there is a reasonable factual basis on which to conclude that the parolee has violated a condition of his release." Larson v. Fabian, No. A05-1355, 2006 WL 1320474, at *3 (Minn. Ct. App. May 16, 2006) (citing In re Welfare of G.M., 560 N.W.2d 687, 695 (Minn. 1997)).

In the present action, Culliver had a reasonable factual basis on which to conclude that Hartman was in violation of the terms of his ISR; namely, Hartman failed to find appropriate, DOC-approved housing. Moreover, Culliver arrested Hartman pursuant to a valid warrant. See Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012) ("[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner ...."). As a result, the court finds that Culliver did not commit a constitutional violation by

---

[3](...continued)
constitutional right, the court does not address Stricker's argument that all claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994).

arresting Hartman for ISR violations.

Further, any continuing seizure after the revocation hearing presents no Fourth Amendment violation. "[A] Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration." Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001); cf. Hudson v. Palmer, 468 U.S. 517, 536 (1984) (finding, in the context of a Fourth Amendment search, that "the Fourth Amendment has no applicability to a prison cell"). Because Hartman was incarcerated pursuant to a court-imposed sentence, there can be no Fourth Amendment violation arising from Hill, Doom and Stricker subsequently denying supervision. Therefore, summary judgment as to all defendants is warranted on the Fourth Amendment claims.

**B.   Procedural Due Process**

Hartman next argues that he was deprived of his procedural due process rights under the Minnesota[4] and federal constitutions.[5] "To

---

[4] "Minnesota courts explicitly refuse to find causes of action for damages under the Minnesota Constitution on their own unless the Minnesota Supreme Court has recognized the cause of action." Riehm v. Engelking, 538 F.3d 952, 969 (8th Cir. 2008). Minnesota courts have not recognized actions for deprivation of due process. See Bird v. State, Dep't of Pub. Safety, 375 N.W.2d 36, 40 (Minn. Ct. App. 1985). This alone warrants summary judgment on the state constitutional claims.

[5] Hartman alleges Fifth and Fourteenth Amendment due process violations. "The Fifth Amendment's Due Process Clause applies only to the federal government or federal actions." Barnes v. City of Omaha, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009). Because no federal action is alleged, the Fifth Amendment claims fail.

implicate the Due Process Clause of the Fourteenth Amendment, [a plaintiff] must show that he has a property or liberty interest that has been affected by the government action." Royer ex rel. Estate of Royer v. City of Oak Grove, 374 F.3d 685, 689 (8th Cir. 2004) (citations omitted). "Protected liberty interests may arise from two sources - the Due Process Clause itself and the laws of the States." Persechini v. Callaway, 651 F.3d 802, 806 (8th Cir. 2011) (quoting Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). "The Supreme Court has not recognized a liberty interest in parole release under the federal Constitution." Nolan v. Thompson, 521 F.3d 983, 989 (8th Cir. 2008) (citation omitted). As such, any procedural due process claim in the present action must arise from state law.

A state may create a "liberty interest when its statutes or regulations place substantive limitations on the exercise of official discretion or are phrased in mandatory terms." Mahfouz v. Lockhart, 826 F.2d 791, 792 (8th Cir. 1987) (citations omitted). In Minnesota, inmates have "a protected liberty interest in [their] supervised release date that triggers a right to procedural due process before that date can be extended." Carrillo v. Fabian, 701 N.W.2d 763, 773 (Minn. 2005). Hartman, however, was released from custody on his supervised release date. His unsuccessful attempts to secure housing and the subsequent revocations of his ISR do not negate this fact. See State ex rel. Bottomley v. Fabian, No. A10-

652, 2010 WL 2363882, at *2 (Minn. Ct. App. June 15, 2010) (finding that, in absence of approved residence, immediate transport to county jail after release does "not change the fact that [inmate] had been 'released' from prison").

Upon release, Hartman had only a conditional liberty interest. "[R]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependant [sic] on observance of the conditions of supervised release." United States v. Farmer, 567 F.3d 343, 347 (8th Cir. 2009) (citation and internal quotation marks omitted). As such, "the full panoply of rights due a defendant in a [criminal] proceeding does not apply to parole revocations." Morrissey v. Brewer, 408 U.S. 471, 480 (1972) (citation omitted). Instead, to satisfy due process for revocation hearings, a parolee must only be provided:

> (a) written notice of the claimed violations of parole; (b) disclosure ... of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses ...; (e) a "neutral and detached" hearing body ...; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 489. Hartman does not allege, and there is no evidence in the record, that the revocation proceedings lacked any of these procedural safeguards. Therefore, summary judgment as to the procedural due process claim is warranted.

### C. Substantive Due Process

Hartman next argues that he was deprived of his substantive due process rights. "[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases." Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1105 (8th Cir. 1992) (citation and internal quotation marks omitted). In a substantive due process claim against an executive official, a plaintiff "must demonstrate *both* that the official's conduct was conscience-shocking ... *and* that the official violated one or more fundamental rights." Moran v. Clarke, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring) (citations omitted).

Hartman argues that he has a fundamental right to be free from wrongful and prolonged incarceration. Fundamental rights are those "which are, objectively, deeply rooted in this Nation's history and tradition." Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (citations and internal quotation marks omitted). Even if Hartman was able to establish a fundamental right under substantive due process, the evidence in the record does not present conscience-shocking behavior. "A plaintiff must establish the government action complained of is truly irrational, that is something more than ... arbitrary, capricious, or in violation of state law." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (alteration in original) (citation and internal quotation marks

13

omitted). "Only the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise to this level" of conscience-shocking. White v. Smith, 696 F.3d 740, 757-58 (8th Cir. 2012) (citation and internal quotation marks omitted); see, e.g., Rogers v. City of Little Rock, Ark., 152 F.3d 790, 797 (8th Cir. 1998) (finding that rape of woman by on-duty police officer was conscience-shocking). Nothing in the record suggests any malice, abuse of power, intent to harm or other behavior approaching the standard of conscience-shocking. Therefore, summary judgment for defendants is warranted on the substantive due process claim.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's motion for summary judgment [ECF No. 44] is denied; and

2.  Defendants' motions for summary judgment [ECF Nos. 49, 65] are granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   December 28, 2012

               s/David S. Doty
               David S. Doty, Judge
               United States District Court